**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norma O. McCauley,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Fry's Food & Drug Stores, Inc., d/b/a Fry's Marketplace, et al.,<br><br>　　　　　Defendants. | No. CV-18-04116-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Defendant Fry's Food & Drug Stores ("Fry's") motion to dismiss pro se Plaintiff Norma McCauley's second amended complaint ("SAC"), as well as McCauley's motion for leave to file a third amended complaint ("TAC"). For the following reasons, the motion to dismiss will be granted, the motion for leave to amend will be denied, and this action will be terminated.

## BACKGROUND

A.　Procedural Background

On November 11, 2018, McCauley initiated this action by filing a complaint (Doc. 1) and a motion for leave to proceed in forma pauperis ("IFP") (Doc. 2).

On January 10, 2019, after screening the complaint pursuant to 28 U.S.C. § 1915, the Court issued an order granting the IFP request but dismissing the complaint, with leave to amend, because it was illegible and failed to adequately plead the existence of subject matter jurisdiction. (Doc. 7.)

On January 18, 2019, McCauley filed a first amended complaint. (Doc. 8.)

On January 23, 2019, McCauley filed the SAC. (Doc. 9.)

On January 24, 2019, the Court issued an order stating that, although McCauley's filing of the SAC was procedurally improper, she would be given retroactive authorization to file it. (Doc. 10.) This order further instructed McCauley "to follow the Federal and Local Rules in the future, including seeking leave from the Court (or written consent from all Defendants) before filing any additional amended complaints." (*Id.* at 2.)

On May 22, 2019, Fry's filed a motion to dismiss the SAC. (Doc. 26.)[1]

On September 5, 2019, McCauley—who had requested and received several extensions of time (Docs. 27-30)—filed a response to the motion to dismiss. (Doc. 31.)

On September 27, 2019, Fry's filed a reply in support of its motion. (Doc. 34.)

Four days later—on October 1, 2019—McCauley filed a motion for leave to file a TAC. (Doc. 35.) Fry's then filed a response and McCauley filed a reply (Docs. 36, 37).

B.    Underlying Facts

The facts alleged in the SAC (Doc. 9) and in McCauley's charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") (Doc. 19-1)[2] are not a model of clarity. Below, the Court has attempted to summarize those facts, which are assumed to be true for purposes of the motion to dismiss.

In 2005, McCauley began working at Fry's as a clerk in the Home Department. (Doc. 19-1 at 2.) McCauley is "female," "African American," and was born in 1959. (Doc. 9 at 4-5.)

In or around 2012, McCauley's immediate supervisor, "Art," who is "Caucasian,

---

[1]    Fry's initially filed a motion to dismiss on April 23, 2019 (Doc. 19), but the Court ordered Fry's to re-file it using a larger font size so that McCauley, who has vision problems, could read it. (Doc. 25.)

[2]    The SAC explicitly refers to the EEOC charge and cross-references it as providing the factual foundation for McCauley's claims. (Doc. 9 at 4 ["It is my best recollection that the alleged discriminatory acts occurred . . . [a]s alleged in EEOC Charge 540-2016-022389"].) Thus, although McCauley did not provide the actual EEOC charge as an exhibit to the SAC—it was provided as an exhibit to the motion to dismiss filed by Fry's (Doc. 19-1)—the Court may consider it when ruling on the motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider . . . documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment.").

male," became aware that McCauley was over 50 years old. (Doc. 9 at 5; Doc. 19-1 at 2.) Afterward, Art mistreated McCauley in a variety of ways:

▪ First, Art refused to train McCauley on the store's new computer system, even though she was qualified to work on this system and another supervisor instructed Art to provide training to her. (Doc. 9 at 5.) Art also refused to train another one of McCauley's co-workers who was over 50 years old. (*Id.*) The only co-workers who received computer training from Art were under 50 years old. (*Id.*)

▪ Second, Art asked McCauley to transfer to the Deli Department. (Doc. 19-1 at 2.) When McCauley refused the transfer request (and other subsequent requests) because a transfer would result in a loss of seniority benefits, Art reduced McCauley's hours "from 40 hours to 20 hours." (Doc. 9 at 5; Doc. 19-1 at 2.) The resulting loss of income caused McCauley to "lose [her] apartment unit and medical insurance." (Doc. 9 at 5.)

▪ Third, Art also changed McCauley's work schedule "11 times" following her refusal to accept the transfer, such that she "had to arrive at work and wait six (6) hours prior to [her] start time, even though [she] was only scheduled to work four (4) hours." (Doc. 9 at 5; Doc. 19-1 at 2.) "[O]ther male younger Caucasian clerks, with significantly less seniority . . . were given preferential treatment in that they were allowed to choose their work schedule, given more hours and overtime." (Doc. 19-1 at 2.) The change in McCauley's work schedule made it impossible for her to take public transportation, which required her to walk, which in turn "aggravated [her] medical condition." (*Id.*) The change in work schedule also forced McCauley to do her job without proper sleep. (Doc. 9 at 5.)

▪ Fourth, one of Art's friends falsely accused McCauley of fighting. (Doc. 9 at 5.) When the union investigated this claim, "no fighting [was] found." (*Id.*)

▪ Fifth, when McCauley asked Art to provide her with training on "company procedures," because such training "would have enhanced [her] career with Fry's," Art refused her request and instead "gave a younger, lighter-skinned bi-racial (Black/Hispanic) male clerk, the same opportunities and benefits that [McCauley] was denied." (Doc. 19-1

at 3.)[3]

Beginning in 2013, and "on a continuous basis" afterward, McCauley filed charges of discrimination against Fry's with the Arizona Attorney General's Office, Civil Rights Division. (Doc. 19-1 at 3.)

In February 2015, McCauley "went on a medical leave of absence due to my medical condition." (Doc. 19-1 at 3.) It appears, although it's not clear, that the medical leave related to McCauley's loss of her toe and partial loss of her foot. (Doc. 9 at 5.) Additionally, at some point after February 2016, McCauley began to suffer from "partial blindness" due to an allergic reaction to blood thinners. (*Id.* at 4-5.)

In February 2016, Fry's discharged McCauley. Although the SAC does not allege why Fry's made the termination decision—it offers only the temporal observation that "Fry's fired me after losing my toe and partial foot" (Doc. 9 at 5) and focuses mostly on the alleged acts of discrimination that preceded the firing—McCauley asserted in her EEOC charge that Fry's "discharged me because I was on a medical leave of absence for one (1) year." (Doc. 19-1 at 3.)

On July 20, 2016, McCauley filed a charge of discrimination with the EEOC. (Doc. 19-1.)

On September 17, 2018, the EEOC opted not to pursue charges against Fry's and provided McCauley with a right-to-sue letter. (Doc. 1 at 6.)

## DISCUSSION

I.    Motion to Dismiss

Fry's moves to dismiss the complaint because (1) all claims, except the apparent wrongful discharge claim under the Americans with Disabilities Act ("ADA"), are time-barred because McCauley failed to file an EEOC charge within 300 days of the challenged conduct, and (2) the ADA claim fails under Rule 12(b)(6). (Doc. 19.)

---

[3]    The SAC also alleges that (1) a different supervisor named "Josh" "harassed" McCauley at some unspecified point in time by filing a complaint against her and not allowing her to leave the store until she signed it, and (2) an unspecified supervisor "followed [McCauley] as [she] worked with a camera phone and took pictures of [her]." (Doc. 9 at 5.)

### A. Legal Standard

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

Although the *Iqbal* pleading standard applies to pro se complaints, they "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). But while entitled to "great leeway," a pro se litigant's pleadings "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

### B. Time-Barred Claims

The SAC asserts claims for race, sex, age, and disability discrimination. (Doc. 9 at 4.) Fry's argues that all of these claims, except for any claim arising from McCauley's termination, are time-barred. (Doc. 19 at 4-6.)

"Title VII requires that a plaintiff timely file charges of discrimination with the EEOC and receive a right to sue letter from the EEOC prior to bringing a Title VII claim in federal court." *Taxey v. Maricopa Cty.*, 237 F. Supp. 2d 1109, 1113 (D. Ariz. 2002).

Such a charge is timely if made "by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

Here, McCauley filed her EEOC charge on July 20, 2016. (Doc. 19-1 at 3.) Thus, for an unlawful employment practice to be actionable in the present lawsuit, it must have occurred on or after September 24, 2015.

"A discrete discriminatory act 'occurred' on the day it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Examples of "[d]iscrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. at 113. Furthermore, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id*. at 112.

Here, McCauley's EEOC charge alleges she was discharged in February 2016. (Doc. 19-1 at 3.) She filed the EEOC charge on July 20, 2016, so any discrimination claim arising from her discharge was pursued within the statutory time period and remains actionable. However, McCauley also stated in her EEOC charge that "[b]eginning February of 2015, I went on a medical leave of absence due to my medical condition." (*Id*.) The next event alleged in the charge is that "[o]n February of 2016, Respondent discharged me because I was on a medical leave of absence for one (1) year." (*Id*.)

Thus, even drawing all reasonable inferences in favor of McCauley, none of the discriminatory conduct discussed in the SAC (other than the termination) could have occurred within the 300-day window. Although the timeframe of the SAC is not explicit, it's clear that McCauley was physically present at work when the alleged acts of discrimination (other than the discharge) took place. (Doc. 9 at 5 [alleging a refusal to train McCauley on computers at work, changed working hours, a reduced number of working hours, being forced to stay at work late to sign a complaint, and a request to move to a different department].) Yet the EEOC charge makes clear that McCauley stopped being

physically present at Fry's in February 2015, when she began her one-year term of medical leave. Thus, all of the alleged acts of discrimination (other than the termination) took place more than 300 days before McCauley filed her EEOC charge in July 2016, meaning that any claims pertaining to those alleged acts of discrimination are time-barred.

## C. **Failure to State a Claim**

Fry's argues that McCauley has failed to state a claim upon which relief can be granted regarding her termination. (Doc. 19 at 6-8.) Fry's contends that the "*sole* allegation in the SAC regarding the termination" is that Fry's fired McCauley "after losing her toe and partial foot." (Doc. 19 at 6, emphasis in original).

The Court agrees that McCauley's claim related to her termination appears to be a claim of disability discrimination under the ADA. Although the SAC broadly alleges that McCauley was discriminated against due to her age, sex, race, disability, and because she filed charges with the EEOC (Doc. 9 at 4-5), most of those claims appear to relate to the other time-barred conduct. Moreover, McCauley asserted in the EEOC charge that she was fired "because" she was on medical leave for one year, which suggests the termination decision may have been disability-related. (Doc. 19-1 at 3.) Finally, McCauley also seemed to concede in the EEOC charge that Fry's didn't terminate her based on her race or gender, as she acknowledged that Fry's followed a pattern of allowing other female and African-American employees to remain on medical leave for more than a year. (*Id.* ["I am aware of male and female Clerks (Black and Caucasian) who have been out of work for more than 1 year, however, they were not discharged like I was."].)

Accordingly, the Court will assess the sufficiency of the SAC under the ADA, which prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To establish a prima facie case of unlawful discharge under the ADA, an employee must show that "(1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job; and (3) [her employer] terminated her because of her disability." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

Here, the SAC does not establish a prima facie case. As to the first element, a disability is defined as a "physical . . . impairment that substantially limits one or more major life activities," and "standing" and "walking" qualify as major life activities. 42 U.S.C. § 12102(1)-(2). The SAC, however, provides no detail whatsoever about how (if at all) McCauley's loss of her toe and partial loss of her foot have limited her major life activities. The partial loss of a foot does not necessarily qualify as a disability under the ADA. *Feltman v. BNSF Railway Co., Inc.*, 2018 WL 529952, *8 (N.D. Ala. 2018) ("Feltman has not demonstrated that his partially amputated right foot is an actual 'disability' under the ADA, because he has not shown that his foot condition limits any of his major life activities."). Moreover, although the SAC also alleges that McCauley now suffers from "near blindness" (Doc. 9 at 4), it clarifies that McCauley didn't begin to suffer from this condition until "*[a]fter* the firing of Fry's," when she had an allergic reaction to blood thinners. (*Id.* at 5, emphasis added.) Thus, it cannot provide the foundation for her ADA claim.

Second, the SAC also fails to specify the essential functions of McCauley's job or allege that she retained the ability to perform those essential functions following the loss of her toe and part of her foot. If anything, the materials submitted by McCauley suggest she wasn't able to perform the essential functions of her job after sustaining these losses— after all, the EEOC charge states that McCauley was forced to go on medical leave, which lasted for a year, beginning in February 2015.

Third, and most important, the SAC fails to allege a causal relationship between McCauley's alleged disability and her discharge. The allegation that "Fry's fired [her] after losing her toe and partial foot" is a statement of temporal relationship, not of causation, and McCauley seemed to allege in her EEOC charge that she was fired for taking too much leave, not because of disability-related discrimination. (Doc. 19-1 at 3 ["[Fry's] discharged me because I was on a medical leave of absence for one (1) year."].)

For these reasons, the Court agrees with Fry's that the SAC should be dismissed in its entirety.

II.  Underline{Motion to Amend}

McCauley has filed a motion for leave to file a TAC, arguing that in her previous two amendments, "nothing was added to the Complaint[,] know [sic] words or text was added to the Complaint [sic]."  (Doc. 35 at 1-2.)  In response, Fry's argues that the request for leave to amend should be denied because (1) it fails to comply with Local Rule 15.1 and (2) amendment would be futile to the extent McCauley wishes to use the TAC to incorporate the facts set forth in her response to the motion to dismiss.  (Doc. 36 at 2-3.)

The Court agrees with Fry's.  First, the motion for leave to amend is deficient under Local Rule 15.1(a).  That rule provides that "[a] party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added."  McCauley did not comply with those requirements here—her one-page motion doesn't specify, with any precision, what changes she would like to make in the TAC and doesn't include a redlined version of the TAC showing how it differs from the SAC.

 Noncompliance with LRCiv 15.1 is a permissible ground for denying a motion for leave to amend.  Indeed, without the proposed new version of the complaint, it is difficult to "make a determination on whether such amendment would be futile." *Weymouth v. Cty. of Maricopa*, 2019 WL 429894, *5 (D. Ariz. 2019).  *See also Aguirre v. Amchem Prod. Inc.,* 2012 WL 760627, *2 (D. Ariz. 2012) ("[P]laintiffs have not properly sought leave to amend because they have not filed a motion attaching a copy of the proposed amended pleading.  See LRCiv. 15.1.  Absent that, we cannot evaluate whether amendment would be futile.").

Second, although pro se litigants such as McCauley should be granted significant latitude when it comes to being afforded leave to cure pleading deficiencies,[4] such leave would be inappropriate here because McCauley's response to the motion to dismiss makes

---

[4]    *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citations omitted).

clear that further amendment would be futile. Notably, McCauley suggests in her response that the termination decision wasn't based on any sort of disability-related animus held by Fry's—instead, she contends that Fry's terminated her for absenteeism (*i.e,* not coming to work after exhausting all of her leave time) and then asserts the termination decision was wrongful because Fry's miscalculated the amount of leave to which she was entitled. (Doc. 31 at 3-4.) Whether or not this is true, it doesn't show that, if afforded yet another opportunity to amend her complaint, McCauley could supply new factual allegations to cure the deficiencies identified in Part I.C above.

Accordingly, **IT IS ORDERED** that:

(1) The motion to dismiss the SAC (Doc. 26) is **granted**;

(2) The SAC is **dismissed with prejudice**;

(3) The motion for leave to amend (Doc. 35) is **denied**; and

(4) The Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 8th day of November, 2019.

Dominic W. Lanza
United States District Judge

## **Exhibit A**

Pending before the Court is Defendant Fry's Food & Drug Stores ("Fry's") motion to dismiss pro se Plaintiff Norma McCauley's second amended complaint ("SAC"), as well as McCauley's motion for leave to file a third amended complaint ("TAC"). For the following reasons, the motion to dismiss will be granted, the motion for leave to amend will be denied, and this action will be terminated.

## **BACKGROUND**

A. Procedural Background

On November 11, 2018, McCauley initiated this action by filing a complaint (Doc. 1) and a motion for leave to proceed in forma pauperis ("IFP") (Doc. 2).

On January 10, 2019, after screening the complaint pursuant to 28 U.S.C. § 1915, the Court issued an order granting the IFP request but dismissing the complaint, with leave to amend, because it was illegible and failed to adequately plead the existence of subject matter jurisdiction. (Doc. 7.)

On January 18, 2019, McCauley filed a first amended complaint. (Doc. 8.)

On January 23, 2019, McCauley filed the SAC. (Doc. 9.)

On January 24, 2019, the Court issued an order stating that, although McCauley's filing of the SAC was procedurally improper, she would be given retroactive authorization to file it. (Doc. 10.) This order further instructed McCauley "to follow the Federal and Local Rules in the future, including seeking leave from the Court (or written consent from all Defendants) before filing any additional amended complaints." (*Id.* at 2.)

On May 22, 2019, Fry's filed a motion to dismiss the SAC. (Doc. 26.)[5]

On September 5, 2019, McCauley—who had requested and received several extensions of time (Docs. 27-30)—filed a response to the motion to dismiss. (Doc. 31.)

On September 27, 2019, Fry's filed a reply in support of its motion. (Doc. 34.)

---

[5] Fry's initially filed a motion to dismiss on April 23, 2019 (Doc. 19), but the Court ordered Fry's to re-file it using a larger font size so that McCauley, who has vision problems, could read it. (Doc. 25).

Four days later—on October 1, 2019—McCauley filed a motion for leave to file a TAC. (Doc. 35.) Fry's then filed a response and McCauley filed a reply (Docs. 36, 37).

B. <u>Underlying Facts</u>

The facts alleged in the SAC (Doc. 9) and in McCauley's charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") (Doc. 19-1)[6] are not

---

[6] The SAC explicitly refers to the EEOC charge and cross-references it as providing the factual foundation for McCauley's claims. (Doc. 9 at 4 ["It is my best

recollection that the alleged discriminatory acts occurred . . . [a]s alleged in EEOC Charge 540-2016-022389"].) Thus, although McCauley did not provide the actual EEOC charge as an exhibit to the SAC—it was provided as an exhibit to the motion to dismiss filed by Fry's (Doc. 19-1)—the Court may consider it when ruling on the motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider . . . documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a

a model of clarity. Below, the Court has attempted to summarize those facts, which are assumed to be true for purposes of the motion to dismiss.

In 2005, McCauley began working at Fry's as a clerk in the Home Department. (Doc. 19-1 at 2.) McCauley is "female," "African American," and was born in 1959. (Doc. 9 at 4-5.)

In or around 2012, McCauley's immediate supervisor, "Art," who is "Caucasian, male," became aware that

_____

motion for summary judgment.").

McCauley was over 50 years old. (Doc. 9 at 5; Doc. 19-1 at 2.) Afterward, Art mistreated McCauley in a variety of ways:

- First, Art refused to train McCauley on the store's new computer system, even though she was qualified to work on this system and another supervisor instructed Art to provide training to her. (Doc. 9 at 5.) Art also refused to train another one of McCauley's co-workers who was over 50 years old. (*Id.*) The only co-workers who received computer training from Art were under 50 years old. (*Id.*)

▪ Second, Art asked McCauley to transfer to the Deli Department. (Doc. 19-1 at 2.) When McCauley refused the transfer request (and other subsequent requests) because a transfer would result in a loss of seniority benefits, Art reduced McCauley's hours "from 40 hours to 20 hours." (Doc. 9 at 5; Doc. 19-1 at 2.) The resulting loss of income caused McCauley to "lose [her] apartment unit and medical insurance." (Doc. 9 at 5.)

▪ Third, Art also changed McCauley's work schedule "11 times" following her refusal to accept the transfer, such that she

"had to arrive at work and wait six (6) hours prior to [her] start time, even though [she] was only scheduled to work four (4) hours." (Doc. 9 at 5; Doc. 19-1 at 2.) "[O]ther male younger Caucasian clerks, with significantly less seniority . . . were given preferential treatment in that they were allowed to choose their work schedule, given more hours and overtime." (Doc. 19-1 at 2.) The change in McCauley's work schedule made it impossible for her to take public transportation, which required her to walk, which in turn "aggravated [her] medical

condition." (*Id.*) The change in work schedule also forced McCauley to do her job without proper sleep. (Doc. 9 at 5.)

▪ Fourth, one of Art's friends falsely accused McCauley of fighting. (Doc. 9 at 5.) When the union investigated this claim, "no fighting [was] found." (*Id.*)

▪ Fifth, when McCauley asked Art to provide her with training on "company procedures," because such training "would have enhanced [her] career with Fry's," Art refused her request and instead "gave a younger, lighter-skinned bi-racial

(Black/Hispanic) male clerk, the same opportunities and benefits that [McCauley] was denied." (Doc. 19-1 at 3.)[7]

Beginning in 2013, and "on a continuous

---

[7] The SAC also alleges that (1) a different supervisor named "Josh" "harassed" McCauley at some unspecified point in time by filing a complaint against her and not allowing her to leave the store until she signed it, and (2) an unspecified supervisor "followed [McCauley] as [she] worked with a camera phone and took pictures of [her]." (Doc. 9 at 5.)

basis" afterward, McCauley filed charges of discrimination against Fry's with the Arizona Attorney General's Office, Civil Rights Division. (Doc. 19-1 at 3.)

In February 2015, McCauley "went on a medical leave of absence due to my medical condition." (Doc. 19-1 at 3.) It appears, although it's not clear, that the medical leave related to McCauley's loss of her toe and partial loss of her foot. (Doc. 9 at 5.) Additionally, at some point after February 2016, McCauley began to suffer from "partial blindness" due to an allergic reaction to blood

thinners.  (*Id.* at 4-5.)

In February 2016, Fry's discharged McCauley.  Although the SAC does not allege why Fry's made the termination decision—it offers only the temporal observation that "Fry's fired me after losing my toe and partial foot" (Doc. 9 at 5) and focuses mostly on the alleged acts of discrimination that preceded the firing—McCauley asserted in her EEOC charge that Fry's "discharged me because I was on a medical leave of absence for one (1) year." (Doc. 19-1 at 3.)

On July 20, 2016, McCauley filed a charge of discrimination with the EEOC. (Doc. 19-1.)

On September 17, 2018, the EEOC opted not to pursue charges against Fry's and provided McCauley with a right-to-sue letter. (Doc. 1 at 6.)

## DISCUSSION

### I. Motion to Dismiss

Fry's moves to dismiss the complaint because (1) all claims, except the apparent wrongful discharge claim under the Americans with Disabilities Act ("ADA"),

are time-barred because McCauley failed to file an EEOC charge within 300 days of the challenged conduct, and (2) the ADA claim fails under Rule 12(b)(6).  (Doc. 19.)

## A.  **Legal Standard**

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix,*

*Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

Although the *Iqbal* pleading standard applies to pro se complaints, they "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773

F.2d 1026, 1027 n.1 (9th Cir. 1985). But while entitled to "great leeway," a pro se litigant's pleadings "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

## B.  Time-Barred Claims

The SAC asserts claims for race, sex, age, and disability discrimination. (Doc. 9 at 4.) Fry's argues that all of these claims, except for any claim arising from McCauley's termination, are time-barred. (Doc. 19 at 4-

6.)

"Title VII requires that a plaintiff timely file charges of discrimination with the EEOC and receive a right to sue letter from the EEOC prior to bringing a Title VII claim in federal court." *Taxey v. Maricopa Cty.*, 237 F. Supp. 2d 1109, 1113 (D. Ariz. 2002). Such a charge is timely if made "by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

Here, McCauley filed her EEOC charge

on July 20, 2016. (Doc. 19-1 at 3.) Thus, for an unlawful employment practice to be actionable in the present lawsuit, it must have occurred on or after September 24, 2015.

"A discrete discriminatory act 'occurred' on the day it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Examples of "[d]iscrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts

alleged in timely filed charges." *Id*. at 113.
Furthermore, "discrete acts that fall within
the statutory time period do not make timely
acts that fall outside the time period." *Id*. at
112.

Here, McCauley's EEOC charge alleges
she was discharged in February 2016. (Doc.
19-1 at 3.) She filed the EEOC charge on
July 20, 2016, so any discrimination claim
arising from her discharge was pursued
within the statutory time period and remains
actionable. However, McCauley also stated
in her EEOC charge that "[b]eginning

February of 2015, I went on a medical leave of absence due to my medical condition." (*Id.*)  The next event alleged in the charge is that "[o]n February of 2016, Respondent discharged me because I was on a medical leave of absence for one (1) year." (*Id.*)

Thus, even drawing all reasonable inferences in favor of McCauley, none of the discriminatory conduct discussed in the SAC (other than the termination) could have occurred within the 300-day window. Although the timeframe of the SAC is not explicit, it's clear that McCauley was

physically present at work when the alleged acts of discrimination (other than the discharge) took place. (Doc. 9 at 5 [alleging a refusal to train McCauley on computers at work, changed working hours, a reduced number of working hours, being forced to stay at work late to sign a complaint, and a request to move to a different department].) Yet the EEOC charge makes clear that McCauley stopped being physically present at Fry's in February 2015, when she began her one-year term of medical leave. Thus, all of the alleged acts of discrimination (other

than the termination) took place more than 300 days before McCauley filed her EEOC charge in July 2016, meaning that any claims pertaining to those alleged acts of discrimination are time-barred.

## C.      Failure to State a Claim

Fry's argues that McCauley has failed to state a claim upon which relief can be granted regarding her termination.  (Doc. 19 at 6-8.) Fry's contends that the "*sole* allegation in the SAC regarding the termination" is that Fry's fired McCauley "after losing her toe and partial foot."  (Doc. 19 at 6, emphasis in

original).

The Court agrees that McCauley's claim related to her termination appears to be a claim of disability discrimination under the ADA. Although the SAC broadly alleges that McCauley was discriminated against due to her age, sex, race, disability, and because she filed charges with the EEOC (Doc. 9 at 4-5), most of those claims appear to relate to the other time-barred conduct. Moreover, McCauley asserted in the EEOC charge that she was fired "because" she was on medical leave for one year, which suggests the

termination decision may have been disability-related. (Doc. 19-1 at 3.) Finally, McCauley also seemed to concede in the EEOC charge that Fry's didn't terminate her based on her race or gender, as she acknowledged that Fry's followed a pattern of allowing other female and African-American employees to remain on medical leave for more than a year. (*Id.* ["I am aware of male and female Clerks (Black and Caucasian) who have been out of work for more than 1 year, however, they were not discharged like I was."].)

Accordingly, the Court will assess the sufficiency of the SAC under the ADA, which prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To establish a prima facie case of unlawful discharge under the ADA, an employee must show that "(1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job; and (3) [her employer] terminated her because of her disability."

*Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

Here, the SAC does not establish a prima facie case. As to the first element, a disability is defined as a "physical . . . impairment that substantially limits one or more major life activities," and "standing" and "walking" qualify as major life activities. 42 U.S.C. § 12102(1)-(2). The SAC, however, provides no detail whatsoever about how (if at all) McCauley's loss of her toe and partial loss of her foot have limited her major life activities. The partial loss of a foot does not necessarily

qualify as a disability under the ADA. *Feltman v. BNSF Railway Co., Inc.*, 2018 WL 529952, *8 (N.D. Ala. 2018) ("Feltman has not demonstrated that his partially amputated right foot is an actual 'disability' under the ADA, because he has not shown that his foot condition limits any of his major life activities."). Moreover, although the SAC also alleges that McCauley now suffers from "near blindness" (Doc. 9 at 4), it clarifies that McCauley didn't begin to suffer from this condition until "*[a]fter* the firing of Fry's," when she had an allergic reaction to

blood thinners. (*Id.* at 5, emphasis added.) Thus, it cannot provide the foundation for her ADA claim.

Second, the SAC also fails to specify the essential functions of McCauley's job or allege that she retained the ability to perform those essential functions following the loss of her toe and part of her foot. If anything, the materials submitted by McCauley suggest she wasn't able to perform the essential functions of her job after sustaining these losses—after all, the EEOC charge states that McCauley was forced to go on medical leave,

which lasted for a year, beginning in February 2015.

Third, and most important, the SAC fails to allege a causal relationship between McCauley's alleged disability and her discharge. The allegation that "Fry's fired [her] after losing her toe and partial foot" is a statement of temporal relationship, not of causation, and McCauley seemed to allege in her EEOC charge that she was fired for taking too much leave, not because of disability-related discrimination. (Doc. 19-1 at 3 ["[Fry's] discharged me because I was on a

medical leave of absence for one (1) year."].)

For these reasons, the Court agrees with Fry's that the SAC should be dismissed in its entirety.

## II. Motion to Amend

McCauley has filed a motion for leave to file a TAC, arguing that in her previous two amendments, "nothing was added to the Complaint[,] know [sic] words or text was added to the Complaint [sic]." (Doc. 35 at 1-2.) In response, Fry's argues that the request for leave to amend should be denied because (1) it fails to comply with Local Rule 15.1

and (2) amendment would be futile to the extent McCauley wishes to use the TAC to incorporate the facts set forth in her response to the motion to dismiss. (Doc. 36 at 2-3.)

The Court agrees with Fry's. First, the motion for leave to amend is deficient under Local Rule 15.1(a). That rule provides that "[a] party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to

be deleted and underlining the text to be added." McCauley did not comply with those requirements here—her one-page motion doesn't specify, with any precision, what changes she would like to make in the TAC and doesn't include a redlined version of the TAC showing how it differs from the SAC.

Noncompliance with LRCiv 15.1 is a permissible ground for denying a motion for leave to amend. Indeed, without the proposed new version of the complaint, it is difficult to "make a determination on whether

such amendment would be futile." *Weymouth v. Cty. of Maricopa*, 2019 WL 429894, *5 (D. Ariz. 2019). *See also Aguirre v. Amchem Prod. Inc.,* 2012 WL 760627, *2 (D. Ariz. 2012) ("[P]laintiffs have not properly sought leave to amend because they have not filed a motion attaching a copy of the proposed amended pleading. See LRCiv. 15.1. Absent that, we cannot evaluate whether amendment would be futile.").

Second, although pro se litigants such as McCauley should be granted significant latitude when it comes to being afforded

leave to cure pleading deficiencies,[8] such leave would be inappropriate here because McCauley's response to the motion to dismiss makes clear that further amendment would be futile. Notably, McCauley suggests in her response that the termination decision wasn't based on any sort of disability-related

---

[8] *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citations omitted).

animus held by Fry's—instead, she contends that Fry's terminated her for absenteeism (*i.e,* not coming to work after exhausting all of her leave time) and then asserts the termination decision was wrongful because Fry's miscalculated the amount of leave to which she was entitled. (Doc. 31 at 3-4.) Whether or not this is true, it doesn't show that, if afforded yet another opportunity to amend her complaint, McCauley could supply new factual allegations to cure the deficiencies identified in Part I.C above.

Accordingly, **IT IS ORDERED** that:

(1)    The motion to dismiss the SAC (Doc. 26) is **granted**;

(2) The SAC is **dismissed with prejudice**;

(3) The motion for leave to amend (Doc. 35) is **denied**; and

(4) The Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 8th day of November, 2019.

Dominic W. Lanza
United States District Judge